543 S.E.2d 306

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Roland WILLIAMS, Defendant Below, Appellant.**

No. 27914.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 28, 2000.

Decided Dec. 11, 2000.

David L. Zehnder, Chief Public Defender, Paul R. Scholle, Assistant Public Defender, Public Defender Corp., Moundsville, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Heather D. Foster, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

This is an appeal by Roland W. Williams (hereinafter "Appellant") from a January 24, 2000, order of the Circuit Court of Marshall County. The lower court sentenced the Appellant to thirty days in the penitentiary and fined him treble damages of $9,052.00, subsequent to his conviction for wrongful injury to timber. The Appellant contends that the lower court erred by refusing to direct a verdict of acquittal on the grounds of insufficiency of evidence. The Appellant also contends that the prosecution's comments during closing argument constitute reversible error and that the lower court erred in admitting a videotape into evidence. We vacate the conviction and remand for the entry of a judgment of acquittal.

## I. Facts

The Appellant entered into an agreement to timber property owned by Mr. John Reilley in 1994, and Mr. Reilley and his sons showed the Appellant the boundary lines of the Reilley property at that time.[1] Mr. George Swierkos purchased property adjoining the Reilley property in 1995, and the property had been surveyed prior to purchase. Mr. Swierkos sprayed red paint on trees marked with surveyor ribbon along the property line.

The Appellant began timbering the Reilley property in 1997, three years after entering into the initial agreement. The Appellant's nephew and grandnephew, Royal and Brad Williams, assisted the Appellant in the timbering endeavor. In April 1997, Mr. Swierkos walked his property line and discovered that loggers had entered what he perceived

---

1. Some inconsistencies existed at trial regarding the extent of the boundary descriptions. Some of the boundaries of the 225-acre property were apparently walked during the 1994 discussions, and some portions not navigable by foot were shown by driving the boundary line.

to be his property and had removed trees. Mr. Swierkos contacted the sheriff and was advised to have his property resurveyed to determine the precise boundary along which the trees were being removed.[2] In July 1997, Mr. Swierkos walked the property again and determined that logging was still being conducted on his property.

On July 7, 1997, Mr. Swierkos and his father-in-law confronted the Appellant and his nephews. Mr. Swierkos videotaped this confrontation and later presented the videotape at trial. The video depicts an initial conversation with Brad Williams in which Brad states, "I ain't the one."[3] After a brief conversation with Brad Williams, Mr. Swierkos converses with the Appellant and Royal Williams who both denied being on the wrong property or seeing any markings indicating the property line.[4] The video captures Mr. Swierkos or his companion stating, "You guys are on private property, you know," as well as other comments such as "You're in trouble boy," "You're in big trouble," "The sheriff is on his way, DNR too," and "Call the sheriff, tell him we've got them."

Mr. Swierkos filed a civil suit against the Appellant approximately one month after the July 1997 confrontation. One year later, in June 1998, Mr. Swierkos contacted the West Virginia State Police. A statement was taken by Trooper First Class Scott Goodnight, of the Moundsville Detachment, in July 1998. Mr. Swierkos indicated that the civil suit had not progressed and that he had just heard that the Appellant had filed for bankruptcy. In a November 1998 statement to the State Police, the Appellant indicated that he had walked portions of the boundary lines in 1994 with the Reilleys. The Appellant also indi-

cated that he did not notice any property markers during his timbering operations until the day Mr. Swierkos arrived with his video camera and would have questioned the Reilleys about the markers if he had seen them. The Appellant discussed what he perceived to be the boundary between the Reilley and Swierkos properties, referencing the corner of an iron bridge, a "bottom," a large red oak tree, and a hillside above a trailer court. The Appellant reiterated that he did not realize that he ever crossed onto the Swierkos property and stated: "The only thing I can tell you, sir, if I would of knew it was another man's property, I definitely wouldn't have been on it. . . . ."

The Appellant was indicted by a grand jury in Marshall County on March 9, 1999, for wrongful injury to timber, a felony, in violation of West Virginia Code § 61–3–52 (1996).[5] The indictment stated that the Appellant had "willfully, maliciously and feloniously, with intent to do harm, unlawfully entered upon the lands of George W. Swierkos, and cut down and removed timber of a value of more than $1,000.00. . . . " The Appellant filed a motion in limine seeking to exclude the videotape made by Mr. Swierkos. The lower court, during a suppression hearing conducted on August 11, 1999, found that the video portion of the videotape was admissible in its entirety. The lower court limited the audio portion, finding that the audio portion prior to the conversation with Brad Williams should not be heard by the jury.[6]

At trial, Trooper Goodnight testified that he had investigated the timbering and had seen boundary markers on the property during that investigation, conducted approximately one year after the timbering oc-

2. According to the record, the resurveying was never conducted.

3. The meaning of Brad Williams' statement, "I ain't the one" was controverted at trial. Brad indicated that he simply meant that he was not the one in charge of the operation and that any inquiries should be directed toward his uncle, the Appellant.

4. A surveyor flag in the middle of the logging road is also depicted on the video. The State contended at trial that the presence of the flag tended to prove that the loggers had knowledge

of the boundary and their trespass. The Appellant, however, maintained that the loggers had not seen the flag and had no realization that the boundary line may have been crossed.

5. West Virginia Code § 61–3–52 was amended in 1999, making a violation of the statute only a misdemeanor. The Appellant was prosecuted prior to the amendment.

6. The limitation removed dialogue between Mr. Swierkos and his father-in-law prior to the conversation with the loggers.

curred. Trooper Goodnight further testified that the Appellant had indicated that he had not seen any markers and would have questioned his location if he had seen any boundary markers indicating that he was on the wrong property.

Michael Wade, a forestry consultant, testified that the timber removed from the Swierkos property could be valued at $2,895.65. He also explained that he had visited the property three days after Mr. Swierkos' confrontation with the loggers and had seen boundary markers on the trees and in the woods.[7]

The Reilley sons, Timothy and John, testified concerning the initial explanation they had given to the Appellant concerning the boundary lines. Timothy indicated that the group had not walked the entire line, but that they had walked "enough that he knew where the line was located." Timothy also stated that the Appellant had returned with questions regarding the location of certain property lines, but had not questioned the location of the line adjoining the Swierkos property. John Reilley testified that the Appellant had not been given a map of the property and that the group had only walked three to four percent of the property line when the initial agreement to timber had been made in 1994.

Mr. Swierkos testified that the old logging roads on his property had been overgrown by brush. Mr. Swierkos explained that the Appellant had informed him during their July 7, 1997, conversation that the Appellant thought he was on the correct property and that the Reilleys had given him permission to cut in certain areas. Mr. Swierkos testified concerning a marker lying in the middle of the logging road, intimating that the Appellant should have been placed on notice by the presence of the marker that he was no longer on the Reilley property. Mr. Swierkos explained that the Appellant had not removed the logs he had cut. Ms. Swierkos sold those logs for $3,900 .00; however, when asked whether he would rather have the check or have his "property back the way it was be-

fore this happened," he answered: "I would not take a check, no way."

During rebuttal closing argument, the prosecutor stated, "I can guarantee you one thing: If this wasn't a crime, we wouldn't be here today. The Court would have thrown this case out along time ago if this wasn't a crime." The lower court sustained Appellant's counsel's objection to the statement, but no curative instruction was requested or given.

The prosecutor also made the following remarks during his rebuttal closing:

> As I said, we could stand here and talk about reasonable doubt, credibility, burden of proof, weighing issues all day long, but I want to leave you with one general rule of thumb.
>
> When you go back in the jury room, look in your hearts. As long as you do what your heart tells you is right, you've done the right thing. When all else fails, use your reason, use your common experience, weigh all the evidence, and do what your heart tells you is the right thing.

Appellant's counsel did not object to those statements by the prosecutor.

The Appellant assigns the following errors: (1) failure to grant a motion for judgment of acquittal; (2) prosecutorial misconduct in urging the jury to disregard the legal concepts of reasonable doubt and in suggesting that if a crime had not been committed, the court would not be conducting the trial; and (3) error in allowing introduction of the videotape made by Mr. Swierkos.

## II. Discussion

The Court typically affords significant deference to a jury decision and explained the burden of a criminal defendant challenging a verdict in syllabus point three of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), as follows.

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evi-

---

**7.** Mr. Wade testified that he observed fluorescent tape an inch wide tied to twigs or small branch- es.

dence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syllabus point one of *Guthrie* presented the following general guidance:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

194 W.Va. at 663, 461 S.E.2d at 169, Syl. Pt. 1. The onerous burden upon a criminal defendant challenging a conviction was also expressed in *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996), as follows:

A convicted defendant who presses a claim of evidentiary insufficiency faces an uphill climb. The defendant fails if the evidence presented, taken in the light most agreeable to the prosecution, is adequate to permit a rational jury to find the essential elements of the offense of conviction beyond a reasonable doubt. Phrased another way, as long as the aggregate evidence justifies a judgment of conviction, other hypotheses more congenial to a finding of innocence need not be ruled out. We reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 303, 470 S.E.2d at 622. We set forth the criminal defendant's burden in syllabus point two of *LaRock,* as follows:

When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

*Id.* at 299, 470 S.E.2d at 618, Syl. Pt. 2. The *Guthrie* and *LaRock* approaches are also consistent with prior pronouncements such as syllabus point five of *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984):

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

The Appellant alleged that the evidence in the present case is insufficient to prove a criminal violation beyond a reasonable doubt. The Appellant contends that the evidence presented by the State was insufficient to establish the particular elements of the statutory violation which was allegedly committed; namely, the Appellant contends that the State did not prove beyond a reasonable doubt that he acted "willfully and maliciously and with intent to do harm" or that he cut timber without permission "upon the lands of another." *See* W. Va.Code § 61–3–52. Each element of a violation must be proven beyond a reasonable doubt by the State, as required by syllabus point four, in

part, of *State v. Pendry,* 159 W.Va. 738, 227 S.E.2d 210 (1976), *overruled in part on other grounds by Jones v. Warden, West Virginia Penitentiary,* 161 W.Va. 168, 241 S.E.2d 914 (1978): "In a criminal prosecution, the State is required to prove beyond a reasonable doubt every material element of the crime with which the defendant is charged...."

Regarding the precise location of the boundary line and whether the Appellant actually crossed it, the State failed to present a deed depicting the precise boundary line; nor did a surveyor testify to establish the property line. There was no fence along the property line; nor were there any remnants of a fence. The only evidence of the property line was the testimony of Mr. Swierkos and the inconsistent and conflicting evidence of the presence of boundary markings. That testimony regarding the existence and nature of the boundary markings was contradictory, and the videotape introduced by the State generated additional confusion by showing various markers without providing any opportunity for the viewer to be properly oriented regarding distance from the actual property line.

 Moreover, the Appellant contends that the necessary element of malice was not proven beyond a reasonable doubt. This Court has consistently recognized the difficulty in enumerating a definitive list of actions constituting malice in a given situation. We have observed that methods of proving malice "cannot be definitely prescribed" because it is a subjective attitude. *State v. Gunter,* 123 W.Va. 569, 574, 17 S.E.2d 46, 49 (1941). In *State v. Burgess,* 205 W.Va. 87, 516 S.E.2d 491 (1999), a case relied upon by the Appellant but rejected by the State as irrelevant to the crime of injury to timber,[8] this Court again explained that malice is not an effortlessly defined term. *Id.* at 89, 516 S.E.2d at 493. The question facing the Court in *Burgess* was whether the defendant's killing of an animal was malicious. This Court consulted Black's Law Dictionary 956 (6th ed.1990) and utilized the following definition of malice: "The intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent.... A condition of the mind showing a heart regardless of social duty and fatally bent on mischief." 205 W.Va. at 89, 516 S.E.2d at 493 (quoting Black's Law Dictionary 958 (6th ed.1990)). We also noted the following definition of "malicious" as "[c]haracterized by, or involving, malice; having, or done with, wicked, evil or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse or as a result of ill will." 205 W.Va. at 89, 516 S.E.2d at 493 (quoting Black's Law Dictionary 958 (6th ed.1990)).

The *Burgess* Court also consulted the following seasoned definition of malice applied in *State v. Douglass,* 28 W.Va. 297, 1886 WL 1818 (1886):

'the source of ... malice is not only confined to a particular ill will to the deceased, but is intended to denote ... an action flowing from a wicked and corrupt motive, a thing done *malo animo,* where the fact has been attended with such circumstances as carry in them the plain indications of a heart regardless of social duty, and fatally bent on mischief. And therefore malice is implied from any deliberate cruel act[.]'

205 W.Va. at 89, 516 S.E.2d at 493 (quoting *Douglass,* 28 W.Va. at 299, 1886 WL 1818 at p. 2) We concluded in *Burgess* that "we simply cannot say the act was evil and cruel." 205 W.Va. at 90, 516 S.E.2d at 494. "There simply is not sufficient evidence in this case from which a reasonable jury could find malice." *Id.*[9]

Likewise, in the present case, an analysis of the evidence presented at trial, even when viewed in a light most favorable to the prose-

---

**8.** The State contends that our reasoning in *Burgess* was limited to that unique factual scenario, in which an evaluation of the presence of malice was required where an animal had been killed. The definitions utilized to determine the presence of malice are universal, however, and were in no manner dependent upon the unique facts in *Burgess.*

**9.** We based our conclusion upon the fact that the method used by the defendant "to kill the cow is the most humane, instantaneous, painless method known." *Burgess,* 205 W.Va. at 90, 516 S.E.2d at 494.

cution, does not justify a finding of malice. The State's evidence, at best, proved that the Appellant was shown portions of the boundary line three years prior to his initiation of the timbering project. While the jury could have inferred from the State's evidence that trees on the Swierkos property were cut, the evidence is devoid of suggestion that the Appellant had any knowledge that he had entered upon the Swierkos property.

Moreover, even the proof of knowledge would not have satisfied the statutory element of malice. There is no indication that the Appellant had any malicious intent in cutting the trees on the Swierkos property. The Appellant committed no act which could be interpreted as surreptitious or covert. He posted a sign with his name and logging number, as required. He timbered what is alleged to be the Swierkos property in the same manner he timbered the Reilley property, openly and thoroughly, rather than choosing only highly-valued timber, as might be expected of someone intentionally and maliciously timbering land without the owner's consent. The Appellant did not open new logging roads and simply cleared and utilized existing logging roads, as instructed by the Reilleys.

The Appellant consulted the Reilleys on numerous occasions with regard to portions of the boundary lines when he was uncertain about their exact location. He consistently expressed his belief that he had a right to be on the property he was logging. He did not even remove the logs he had cut. The State presented no evidence of malice toward Mr. Swierkos, intent to enter Mr. Swierkos' land, or malicious removal of the timber. At best, the State's evidence could potentially have convinced a jury that the Appellant negligently entered upon the lands of another and failed to notice surveyor markings or misinterpreted them as markings for trees which were to be removed.

Based upon the foregoing, we conclude that the evidence was insufficient "to convince a reasonable person of the defendant[s'] guilt beyond a reasonable doubt" *See* Syl. pt. 1, in part, *Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169. We find that "the record contains no evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." *Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

Having based our reversal upon the Appellant's primary assignment of error, we decline to address the Appellant's concerns with the introduction of the videotape or the alleged prosecutorial misconduct. The Appellant's conviction and sentence for wrongful injury to timber is vacated, and this case is remanded for entry of a judgment of acquittal. *See State v. Baker*, 177 W.Va. 769, 771, 356 S.E.2d 862, 864 (1987) ("In view of the fact that the defendant was entitled to a judgment of acquittal, no retrial is permitted and the case is remanded for the entry of such judgment.")

Reversed and Remanded. Conviction Vacated.