724 S.E.2d 343

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Defendant Below, Petitioner**

v.

**Jennifer MILLER, Individually and as Mother and Next Friend of Trais Westfall, an Infant, Plaintiff Below, Respondent.**

No. 11–0315.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 2012.

Decided Feb. 24, 2012.

Don C.A. Parker, Esq., Glen A. Murphy, Esq., Charity K. Flynn, Esq., Spilman Thomas & Battle, PLLC, Charleston, WV, for Petitioner.

Chad S. Lovejoy, Esq., Duffield, Lovejoy & Stemple, PLLC, Huntington, WV, Stephen C. Littlepage, Hyer & Littlepage, Point Pleasant, WV, for Respondent.

PER CURIAM:

This case is before the Court upon the appeal of the defendant below, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). In this case, National Union appeals from the September 30, 2010, order of the Circuit Court of Kanawha County. This order denied National Union's motion for summary judgment and found as a matter of law that insurance coverage exists for the claims of the respondent, Jennifer Miller. National Union contends that the circuit court erred in finding that insurance coverage exists as to Ms. Miller's claims. National Union seeks reversal of the order granting judgment in Ms. Miller's favor.

After a thorough review of the record presented for consideration, the briefs, the legal authorities cited, and the arguments of the

petitioner and respondent, we find that the circuit court committed reversible error by determining as a matter of law that insurance coverage exists. We therefore reverse the circuit court's order denying the petitioner's motion for summary judgment and its finding of coverage in favor of the respondent, and we remand this case for proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 2007, while riding on a bicycle with a friend, Trais Westfall's face struck a wire strung along the property line of land owned by the West Virginia Department of Forestry ("WVDOF")[1] called the Clements State Tree Nursery. The nursery and the land through which Ms. Westfall traveled abutting the nursery is situated in West Columbia, Mason County, West Virginia. As a result of contact with the wire, Ms. Westfall suffered a severe laceration to her face which has required surgical repair and will require future medical care.

At the time of the accident, the executive branches of the State of West Virginia, including WVDOF, were covered by "Wrongful Act Liability Insurance" through insurance policy # RMGL 159–52–62 issued through National Union. The policy, effective between July 1, 2007, and July 1, 2008, provided,

> The Company will pay on behalf of the **"Named Insured,"** in accordance with the terms of this coverage part, all sums which **"Named Insured"** shall become legally obligated to pay as damages for a **"loss"** arising from any **"Wrongful Act"** of the **"Named Insured"** or of any other person for whose actions the "Named Insured" is legally responsible. . . .

(Boldface emphasis in original). Under this language of the policy, the "Company" refers to National Union, and "Named Insured"

refers to State agencies such as WVDOF. A "Wrongful Act" is defined as "any actual or alleged act, breach of duty, neglect, error, misstatement, misleading statement or omission by the **"insured(s)"** in the performance of [its] duties. . . ." (Boldface emphasis in original). In this portion of the policy, the term "insured(s)" also includes WVDOF. Endorsement #7 of the policy explicitly modifies coverage:

> It is agreed that the insurance afforded under this policy does not apply to any claim resulting from the ownership, design, selection, installation, maintenance, location, supervision, operation, construction, use, or control of streets (including sidewalks, highways or other public thoroughfares), bridges, tunnels, dams, culverts, storm or sanitary sewers, rights-of-way, signs, warnings, markers, markings, guardrails, *fences, or related or similar* activities or *things* but it is agreed that the insurance afforded under this policy does apply (1) to claims of "bodily injury" or "property damage" which both directly result from and occur while employees of the state of West Virginia are physically present at the site of the incident at which the "bodily injury" or "property damage" occurred performing construction, maintenance, repair, or cleaning. . . .

(Emphasis in original omitted, additional emphasis added).

Respondent and plaintiff below, Ms. Miller, individually and as mother and next friend of her minor daughter, Trais Westfall, brought suit against the WVDOF for injuries Ms. Westfall suffered on or near the property line of land owned by the WVDOF. In the complaint, the respondent asserted (1) negligence on the part of WVDOF and (2) a declaratory judgment action against National Union seeking recognition that National Union must indemnify the State in this case. National Union responded by filing a motion for summary judgment in which it maintained that it is not responsible for indemnifying the state because the exclusionary lan-

---

1. The record is not definitive as to who owns the property. The parties assert that WVDOF owns the property, but the depositions indicate that the property may be owned by West Virginia University. Because the insurance policy in question covered both WVDOF and West Virginia University at the time the injury occurred, it is irrelevant who the owner actually is for purposes of the determination of whether coverage exists.

guage in Endorsement # 7 of the insurance policy excluded coverage for injury caused by "fences, or similar or related ... things."

In support of its motion for summary judgment, National Union presented the circuit court with depositions of two foresters employed by WVDOF, Dan Kincaid and Jason Huffman. Neither Mr. Kincaid nor Mr. Huffman was present at the time of the accident, nor were any other WVDOF employees, but both visited the site of the accident after the fact.

In his June 9, 2010 deposition, Mr. Kincaid, who was the Assistant State Forester for Special Projects for WVDOF at the time of the accident, discussed what he saw at the site of the accident:

A. Well, they had—it's just an old fence row. There's an evident fence row all around the property. Some of the fence was in disrepair in places. Other places were completely overgrown. In some places, it was standing fence. Other places, it was obvious neighbors had probably either cut it or pushed it down toward them so—because there was places in the orchard where you could see where they had camped overnight and set little fires and things.... It was just a—like you see in the woods anywhere, just an old fence row.

Q. Now, you—you said that it was—...—but it was obvious that it was an old fence row. I think that was your testimony. This may sound like a funny question, but why was it obvious to you that it was an old fence row?

A. Well, I'm a forester I guess so I go to—any time you go from one property to the next, you—most of the time—not always, but most of the time you see—you can tell where the property lines are because there's either a fence post or there's wire or sometimes there's an intact fence. But generally, property owners, you know, mark their boundaries so most all the times when you go from one property to another in the woods, you—or even from farm to farm, you can tell. There's almost always a fence there and it's either intact or you can see fence posts or you can see

wire or, you know, a combination of all that.

\* \* \*

Q. And do you have any understanding as to what that—what that wire was or what it was ever part of?

A. Well, I'd assume it was—it's strands of this woven wire that, you know, was on the fence line there on the fence row.

Q. On the occasions that you had to go out to the seed orchard, had you ever observed any other wire of this nature?

A. Yeah, the—yeah, it was—I mean, just if you look at it, it's—it's a fence row all the way around it and it was deteriorating—it—I mean, it's like you—in just looking at it, you can say well that's a fence. It's like this—this is probably a coffee cup, that's probably a chair, that—to me, that was a fence line. And the best of my recollection, there were places where there was wire and there was places where it had been, you know, probably knocked down, pulled down, fell down, deteriorated, you know, for whatever reason, whoever did it....

Jason Huffman, an Assistant Nursery Superintendent at the time of the accident, also gave testimony at a deposition on June 9, 2010. Mr. Huffman accompanied the respondent's family to the site of the accident, and in his deposition he described what he saw:

Q. ... So you went down to the site. What if anything did you do while you were down there?

A. I cut out the piece of wire that she had run into, which was still in place—

Q. Where did you—what did you cut the wire away from?

A. From the—from the fence post.

\* \* \*

Q. ... Is there any question in your mind, Mr. Huffman, that this—that the wire—that this—this young girl ran into was part of a fence that had been in existence prior to, you know, previously in existence?

A. Yes.

Q. It was the remnant of a fence?

A. It was the remnant of a fence that was intact at one time.

Q. Okay. The wire wasn't put up for any other purpose other than for fencing; is that—

A. Right. Right.

In an order dated September 30, 2010, the circuit court denied National Union's motion for summary judgment and ruled that coverage exists as a matter of law. The court found that National Union "cannot meet its strict burden to prove the facts upon which its proffered exclusionary language operates." National Union now appeals to this Court.

## II.

### STANDARD OF REVIEW

 National Union seeks relief from the circuit court's order denying National Union's motion for summary judgment and granting judgment as a matter of law in favor of Ms. Miller. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Likewise, " '[t]his Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court.' Syllabus point 1, *Findley v. State Farm Mut. Auto. Ins. Co.,* 213 W.Va. 80, 576 S.E.2d 807 (2002)." Syl. pt. 2, *Younker v. E. Associated Coal Corp.,* 214 W.Va. 696, 591 S.E.2d 254 (2003).

 This Court has held, "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963); *see also* W. Va. R. Civ. Pro. 56. " 'A party who moves for summary judgment has the burden of showing that there is no genuine issue of material fact and any doubt as to the existence of such issue is resolved against the movant for such judgment.' Syl. Pt. 6, *Aetna Cas. & Sur. Co. v. Federal Ins.*

*Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. pt. 4, *Kelley v. City of Williamson,* 221 W.Va. 506, 655 S.E.2d 528 (2007). Because this case involves both the denial of National Union's motion for summary judgment and the granting of summary judgment in favor of the respondent, the proper standard of review is *de novo.* This Court is asked to determine whether any genuine issues of material fact exist to preclude a judgment in favor of Ms. Miller.

## III.

### DISCUSSION

The sole issue National Union raises on appeal is whether the circuit court incorrectly found as a matter of law that National Union has a duty to indemnify WVDOF. In analyzing this issue, the Court must determine whether the circuit court was correct in determining that Endorsement # 7 of the policy issued by National Union does not apply. There are many facets to this case, and we will proceed by addressing each in turn.

### A.

### Indemnity

 The West Virginia Constitution grants the state immunity for claims against it: "The state of West Virginia shall never be made defendant in any court of law or equity. . . ." W. Va. Const. art. VI, § 35. This Court has held that the immunity conferred by the constitution extends also to agencies of the state. *Parkulo v. W. Va. Bd. of Prob. & Parole,* 199 W.Va. 161, 168, 483 S.E.2d 507, 514 (1996). WVDOF is one such agency.[2] Despite this grant of immunity, the Legislature has created a mechanism by which injured parties can make claims against and recover from the state. This is accomplished through the state's purchase of liability insurance. As this Court has held, "Suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability

---

**2.** The WVDOF is created and continued by W. Va.Code §§ 19–1A–1 to –6 (2011). Among the many responsibilities listed throughout these sec-

tions, the WVDOF is charged with the supervision and management of forests and natural resources.

insurance coverage, fall outside the traditional constitutional bar to suits against the State." Syl. pt. 2, *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983).[3] To the extent that a claim falls outside the bounds of the state's liability insurance, it may not be maintained against the state. *Parkulo*, 199 W.Va. at 170, 483 S.E.2d at 516.

In the case at bar, Ms. Miller is seeking recovery on behalf of her daughter via the state's liability insurance policy. National Union argues that the injury suffered by Ms. Westfall falls outside of the coverage of the insurance policy. The circuit court held to the contrary, stating that because National Union cannot meet its burden of proving that the exclusionary language controls, coverage must exist as a matter of law. We now turn to evaluating the exclusionary language in Endorsement # 7 and whether it applies in this case.

## B.

### Exclusionary Language

■ The issue before us is unlike the typical summary judgment case we often consider. Here we are presented with a judgment as a matter of law in the favor of the non-moving party where that non-moving party made no cross motion for summary judgment. Although this situation is not common, we have considered this type of case before:

"As the purpose of the summary judgment proceeding is to expedite the disposition of the case a summary judgment may be rendered against the party moving for judgment and in favor of the opposing party even though such party has made no motion for judgment." Syllabus point 4, *Employers' Liability Assurance Corp. v. Hartford Accident & Indemnity Co.*, 151 W.Va. 1062, 158 S.E.2d 212 (1967).

Syl. pt. 2, *Arnold v. Palmer*, 224 W.Va. 495, 686 S.E.2d 725 (2009).

■ Although this appeal is being sought on an order entered prior to the disposition of all of the issues, the case is nonetheless ripe for review. Generally, orders made prior to the ending of litigation on the merits are interlocutory and may not be appealed. Syl. pt. 1, *Arnold v. Palmer*, 224 W.Va. 495, 686 S.E.2d 725 (2009) (" 'The entry of an order denying a motion for summary judgment made at the close of the pleadings and before trial is merely interlocutory and not then appealable to this court.' Syllabus, *Wilfong v. Wilfong*, 156 W.Va. 754, 197 S.E.2d 96 (1973)."). However, the law does allow review of claims upon which the court has made a *final* ruling. *Hubbard v. State Farm Indem. Co.*, 213 W.Va. 542, 549, 584 S.E.2d 176, 183 (2003). Typically, for the order to be considered final, it must contain certification language stating that there is "no just reason for delay" and that it is "direct[ing] ... entry of judgment." *Id.*, W. Va. R. Civ. P. 54(b). This language is not always necessary:

"Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) ... will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect."

*Hubbard*, 213 W.Va. at 549, 584 S.E.2d at 183 (2003) (quoting *Durm v. Heck's Inc.*, 184 W.Va. 562, 401 S.E.2d 908 (1991)).

■ The September 30, 2010, order finds that "coverage exists, as a matter of law, for the Plaintiff's claims." In her suit, Ms. Miller brought two claims, one of which sought to have National Union indemnify the State in the case. The circuit court's order completely disposes of the indemnity claim. Although it does not contain the W. Va. R. Civ. P. 54(b) finality language, the parties argue—and this Court agrees—that the order

3. Since *Pittsburgh Elevator Co.* was decided, concurrences in *J.H. v. W. Va. Div. of Rehab. Servs.*, 224 W.Va. 147, 680 S.E.2d 392 (2009), and *Blessing v. Nat'l Eng'g & Contracting Co.*, 222 W.Va. 267, 664 S.E.2d 152 (2008), have questioned the constitutional viability of *Pittsburgh Elevator Co.* in view of the immunity granted to the state by W. Va. Const. art. VI, § 35. Because the constitutional viability of *Pittsburgh Elevator Co.* is not raised as error herein, we decline to address this issue at length.

is final in its nature and effect as to the issue of indemnity. Therefore, the matter is properly before this Court on appeal, and the Court may consider whether the circuit court's order is correct.

■ The circuit court's order denying summary judgment states that National Union is unable to prove its case. In reaching this conclusion, the circuit court examined the testimony of Mr. Kincaid and Mr. Huffman. The order states that these two men may not provide deposition testimony, based on their own personal knowledge, that the structure that caused the injury in this case was a fence at the time the injury occurred. The order quotes W. Va. R. Evid. 602. This rule reads, in part, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

The circuit court reasoned that neither Mr. Kincaid nor Mr. Huffman had "personal knowledge about matters that occurred prior to their employment with the Defendant WVDOF'" that would enable them to provide a basis for National Union's definition of a fence. The order notes that both National Union and Ms. Miller provided a definition for "fence" from Merriam–Webster Online Dictionary: "a barrier intended to prevent escape or intrusion or to mark a boundary; especially such a barrier made of posts and wire or board." The circuit court interpreted this language to require that for a structure to constitute a fence, the structure must "keep[ ] something in" or "keep[ ] something out." Mr. Kincaid and Mr. Huffman testified in their depositions that prior to their employment with WVDOF, the Nursery had been used as an orchard to grow seedlings. According to their deposition testimony, both men believed that the wire that caused the injury to Ms. Westfall was at one time part of a functioning fence.

In its order, the circuit court also discussed the definition of a "lawful fence" under W. Va.Code § 19–17–1 (1986), which reads, in part:

Every fence of the height and description hereinafter mentioned shall be deemed a lawful fence as to any horses, mules, asses, jennets, cattle, sheep, swine, or goats, which could not creep through the same, that is to say:

... (e) If built with posts and wire, or pickets and wire, four feet high, and shall not consist of less than six strands....

The circuit court's analysis is flawed in two distinct ways. First, the circuit court errs in finding that the testimony of Mr. Kincaid and Mr. Huffman is unhelpful to National Union's case. Although neither man can testify as to his own personal knowledge of when or how the structure that injured Ms. Westfall was originally constructed, he can testify as to what he saw along the property line of the property: "an old fence row" or "the remnant of a fence that was intact at one time."

■ The circuit court's order ignores some of the pertinent language in Endorsement # 7; the policy does not provide coverage for injuries caused by "fences, *or related or similar* activities or *things*." (Emphasis added). Thus, it is unnecessary that National Union prove that the structure causing Ms. Westfall's injury is currently a fence or was ever a fence. National Union need only show that the structure is a related or similar thing to a fence. National Union, through the personal knowledge testimony of Mr. Kincaid and Mr. Huffman, produced evidence that the structure is related to or similar to a fence. Rule 602 is therefore satisfied, and a material question of fact exists as to whether the structure which caused the subject injuries was a "fence" or a "related or similar" thing. Thus, the circuit court was in error in granting judgment as a matter of law in favor of Ms. Miller.

■ The second basis of error is the circuit court's reliance on W. Va.Code § 19–17–1. The circuit court suggests that because the structure that caused the injury to Ms. Westfall did not satisfy the requirements of being a lawful fence within the meaning of § 19–17–1, the structure was not a fence within the meaning of the exclusionary language in Endorsement # 7. Upon our review of the record and the applicable law, we find that whether the structure is a "lawful fence" is of no moment. Endorsement # 7 does not explicitly require that the fence it describes be a "lawful fence" as described in

§ 19–17–1. Furthermore, the exclusionary language does not implicitly indicate that this section applies; § 19–17–1 only refers to fences used to control livestock, and there is no indication in the policy that the only fences it intended to cover were those intended for livestock. Although it is our determination that this section does not explicitly or implicitly apply, we do recognize that even if it did, it may support National Union's position under the "similar to" or "related to" language of Endorsement # 7.

 The circuit court's order notes that our jurisprudence has established that "[w]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. pt. 5, *Nat'l Mut. Ins. Co. v. McMahon & Sons Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998). But we have also held that " '[l]anguage in an insurance policy should be given its plain, ordinary meaning.' Syllabus Point 1, *Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), *overruled, in part, on other grounds by Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W.Va. 734, 356 S.E.2d 488 (1987)." Syl. pt. 1, *Mylan Labs. Inc. v. Am. Motorists Ins. Co.*, 226 W.Va. 307, 700 S.E.2d 518 (2010); and " '[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syl. pt. 2, *Mylan Labs. v. Am. Motorists Ins. Co.*, 226 W.Va. 307, 700 S.E.2d 518 (2010).

 Here we have been presented with the task of determining the plain meaning of the word "fence." Both parties have submitted that the Merriam–Webster Online Dictionary definition of "fence" should control. After exploring the meaning of fence in our case law and the case law of other jurisdictions, we find that the Merriam–Webster Online Dictionary definition accurately reflects the plain meaning of the word "fence." *See, e.g., State v. Williams*, 209 W.Va. 25, 31, 543 S.E.2d 306, 312 (2000) (stating that remnants of a fence can be introduced as evidence for use in determining the location of a property line); *Dustin v. Miller*, 180 W.Va. 186, 189–90, 375 S.E.2d 818, 821–22 (1988) (discussing whether a strand of barbed wire strung between trees, described in the case as a fence, created a notorious boundary line); *Crim v. England*, 46 W.Va. 480, 486, 33 S.E. 310, 312 (1899) (explaining that the purpose of the fence built in the case was to "supply certainty as to the land intended to be given"); *see also Ewing v. Burnet*, 36 U.S. 41, 46, 11 Pet. 41, 9 L.Ed. 624 (1837) (describing a fence as "evidence of the fact of occupancy" in an adverse possession case); *United States v. Sarno*, 24 F.3d 618, 623 (4th Cir.1994) (describing a four feet high physical perimeter barrier as a fence); *Burke v. Ski Am., Inc.*, 940 F.2d 95, 98 (4th Cir.1991) (describing plastic webbing as a fence, the purpose of which is to warn skiers of stones and trees, not to provide a protective barrier).

Upon our *de novo* review of the circuit court's order, we find that summary judgment was inappropriate because there exists a material question of fact as to whether the structure injuring Ms. Westfall was a fence or whether the structure was similar or related to a fence. Therefore, this case must be reversed and remanded for further proceedings on this question of fact.

## IV.

## CONCLUSION

For the reasons set forth above, this Court reverses the circuit court's order entered September 30, 2010, which denied National Union's motion for summary judgment and granted judgment as a matter of law in favor of Ms. Miller. This case is remanded to the Circuit Court of Kanawha County for further proceedings consistent with this opinion.

Reversed and remanded.