# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-213

_____

MILBANK INSURANCE COMPANY,
Plaintiff Below, Petitioner,

v.

NICK SHOWALTER and KELLY MATTSON,
as Co-Administrators of the ESTATE OF SIERRA MATTSON,
Defendants Below, Respondents.

FILED

June 7, 2024

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Ohio County
Honorable David J. Sims, Judge
Civil Action No. CC-35-2020-C-208

REVERSED AND REMANDED

_____

Submitted: April 2, 2024
Filed: June 7, 2024

William M. Harter, Esq.
Elise N. McQuain, Esq.
Frost Brown Todd LLP
Columbus, Ohio

Carte P. Goodwin, Esq.
Frost Brown Todd LLP
Charleston, West Virginia
Counsel for Petitioner

James G. Bordas III, Esq
Richard A. Monahan, Esq.
Matthew C. Schrebe, Esq.
Bordas & Bordas, PLLC
Wheeling, West Virginia
Counsel for Respondents

JUDGE DANIEL W. GREEAR delivered the Opinion of the Court

GREEAR, JUDGE:

Petitioner Milbank Insurance Company ("Milbank") appeals the April 25, 2023, order of the Circuit Court of Ohio County denying its Motion for Summary Judgment and granting Respondents Nick Showalter and Kelly Mattson, Co-Administrators of the Estate of Sierra Mattson's (collectively "Respondents") Cross Motion for Summary Judgment. On appeal, Milbank argues that the circuit court erred in finding that Respondents were entitled to underinsured motorists coverage benefits under the Milbank policy at issue. Conversely, Respondents assert the circuit court did not err. Respondents further allege that this Court lacks jurisdiction to hear Milbank's instant claims, as it is the appeal of an interlocutory order.

Based upon our review of the record, the arguments of counsel, and applicable law, we find that this Court has jurisdiction to hear the instant claims under West Virginia Code § 51-11-4(b)(1) (2021) and Rule 54(b) of the *West Virginia Rules of Civil Procedure*. Further, we find that the policy of insurance issued by Milbank to Respondents' decedent does not extend to provide underinsured motorists coverage benefits when the liability of the underinsured motorist does not arise from the ownership, maintenance, or use of the alleged underinsured motor vehicle. Accordingly, we reverse the circuit court's April 25, 2023, order and remand this matter for further proceedings consistent with this opinion.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Near midnight on November 23, 2019, Caleb Ratcliffe ("Mr. Ratcliffe") operated a 2019 Hyundai Accent vehicle owned by Sierra Mattson ("Ms. Mattson") on Ohio State Route 7 in Pease Township, Belmont County, Ohio.[1] Ms. Mattson was a front seat passenger in her vehicle, when that vehicle—which was traveling the wrong way on Route 7—collided head on with a vehicle operated by Autumn Day.[2] As a result of the November 23, 2019, accident ("accident"), five people died, including Mr. Ratcliffe and Ms. Mattson, who were both pronounced dead at the scene of the accident.[3]

At the time of the accident, Ms. Mattson's vehicle was insured by a policy of insurance issued by Milbank, Policy No. 1000332816. The Milbank policy issued to Ms. Mattson included both liability and underinsured motorists coverage provisions.[4]

---

[1] In their responses to Milbank's First Set of Combined Interrogatories, Requests for Production and Requests for Admissions, Respondents admit that, upon information and belief, Caleb Ratcliffe was operating Ms. Mattson's vehicle at the time of the underlying accident with Ms. Mattson's permission. *See* App. at 86.

[2] Officers investigating the underlying accident found no circumstances contributing to the accident and no fault on the part of Ms. Day related to the accident. *See* App. at 88. On appeal, Milbank acknowledges that the underlying accident was "Mr. Ratcliffe's fault, as he was driving the wrong direction and collided with an oncoming vehicle." *See* Pet'r's Br. at 2.

[3] Ms. Day and two of the passengers in the vehicle she was operating also died as a result of the collision and subsequent vehicle fire.

[4] The record reflects that the Milbank policy issued to Ms. Mattson had liability limits of $100,000 per person /$300,000 per accident and underinsured motorists limits of $25,000 per person/$50,000 per accident.

Following the accident, Respondents demanded payment from Milbank of the liability coverage limits of Ms. Mattson's policy. Milbank paid the full limits of liability coverage, Three Hundred Thousand Dollars ($300,000), which was divided equally among all claimants involved in the accident. *See* App. at 31.

When the accident occurred, Mr. Ratcliffe owned his own motor vehicle, which was insured by Erie Insurance Property and Casualty Company ("Erie"), Policy No. Q08 8005268. The Erie policy issued to Mr. Ratcliffe contained both liability and underinsured motorists coverage provisions. Upon demand, Erie paid the applicable liability coverage limits under Mr. Ratcliffe's policy, but Respondents contend that those limits were insufficient to satisfy the full amount of Ms. Mattson's damages.[5] Respondents then made a demand for the underinsured coverage limits under the underinsured motorists provision of the Milbank policy issued to Ms. Mattson. Milbank rejected the demand, citing various provisions of the Milbank policy (as more fully discussed below), contending that these provisions precluded coverage under the facts of this claim.

On October 13, 2020, Milbank filed the underlying action seeking a declaratory judgment that the provisions of the Milbank policy issued to Ms. Mattson did not extend to provide underinsured motorists coverage for Mr. Ratcliffe's personal vehicle,

---

[5] The record reflects that the liability limits of the Erie policy issued to Mr. Ratcliffe were divided equally among all claimants involved in the accident. In total, Respondents received $120,000 in payments under the liability provisions of the Erie and Milbank policies.

3

which was not involved in the accident. After discovery, both parties filed competing motions for summary judgment on the underinsured motorists coverage issue. The circuit court interpreted the underinsured motorists coverage provision of the policy and determined that Mr. Ratcliffe's personal vehicle was an underinsured motor vehicle pursuant to Milbank's policy and the language of West Virginia Code § 33-6-31(b) (2015).

By order dated April 25, 2023, the circuit court found that there was no provision in the Milbank policy that required the underinsured motor vehicle to be involved in the accident in order to trigger the underinsured motorists coverage. Accordingly, the circuit court granted Respondents' motion, in turn denying Milbank's competing motion, holding that Respondents were entitled to UIM coverage benefits under Ms. Mattson's Milbank policy. This appeal followed.[6]

## II. STANDARD OF REVIEW

Our appellate review of a circuit court's order granting summary judgment is *de novo*. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Further, our review of this matter is guided by the Supreme Court of Appeals of West Virginia's ("SCAWV") recognition, in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on an appeal from the circuit court

---

[6] Oral argument in this matter was held before this Court on April 2, 2024.

is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." The SCAWV has also determined that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgment, shall be reviewed *de novo* on appeal." *See* Syl. Pt. 2, *Riffe v. Home Finders Assoc., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999). In conducting our *de novo* review we must provide "a new, complete and unqualified review to the parties' arguments and the record before the circuit court." *Edward S. v. Raleigh County Housing Auth.*, 248 W. Va. 458, 463, 889 S.E.2d 31, 36 (2023). With these standards in mind, we consider the issues raised on appeal.

## III. DISCUSSION

Before addressing Milbank's arguments on appeal, we must dispense with Respondents' assertion that this Court does not have jurisdiction because the order on appeal "does not constitute an appealable final judgment" and is, therefore, an interlocutory order. We disagree with Respondents and find that this Court has jurisdiction.

This matter came before the circuit court below with Milbank seeking relief in a declaratory judgment action, as to the coverage under its policy issued to Respondents' decedent. In response to such action, Respondents filed a counterclaim alleging breach of contract, unfair settlement practices, and bad faith. The circuit court appropriately

5

confronted the request for declaratory relief first, staying the counterclaims as such were derivative of the underlying liability question.

Rule 54 of the *West Virginia Rules of Civil Procedure* discusses judgments and describes, in subsection (b), that

> [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon express direction for the entry of judgment.

Here, the circuit court's April 25, 2023, order includes the express provision that ". . . pursuant to W. Va. R. Civ. P. 54(b), this Order constitutes the entry of a final judgment as to the issues of insurance coverage and declaratory judgment raised herein." *See* App. at 164. When reviewing a determination of a Rule 54(b) certification, our courts "scrutinize the circuit court's evaluation of the interrelationship of the claims, in order to decide whether the circuit court completely disposed of one or more claims . . ." and question whether there is any just reason for delay. *See Province v. Province*, 196 W. Va. 473, 478–79, 473 S.E.2d 894, 899-900 (1996). A judgment may be properly certified under Rule 54(b) only if it possesses the requisite degree of finality. That is, "the judgment must completely dispose of at least one substantive claim." *Hubbard v. State Farm Indem. Co*., 213 W. Va. 542, 550, 584 S.E.2d 176, 184 (2003) (quoting *Province*, 196 W. Va. at 479 n.12, 473 S.E.2d at 900 n.12).

As to the determination of finality, we find *National Union Fire Ins. Co. of Pittsburgh v. Miller*, 228 W. Va. 739, 724 S.E.2d 343 (2012) instructive. In *Miller*, the plaintiff brought a declaratory judgment action for indemnification against National Union. *Id*. at 746, 724 S.E.2d at 350. The circuit court in *Miller* held that coverage existed via summary judgment motions; however, the court made no determination as to damages. Despite the court's lack of Rule 54(b) certification, the SCAWV determined that "[t]he circuit court's order completely disposes of the indemnity claim" and permitted the appeal to proceed. *Id.* The *Miller* Court recognized that a disposition of the issue of coverage is a final judgment appropriate for appellate review. Similarly, in the case at bar, the circuit court's order disposed of the coverage issue completely and left nothing else to accomplish on the subject of coverage applicability; accordingly, we conclude that a direct appeal on such issue is appropriate and per West Virginia Code § 51-11-4(b)(1)[7] this Court has jurisdiction to handle the instant claim.

We now turn to the merits of the instant case. On appeal, Milbank alleges two assignments of error. First, Milbank contends that the circuit court erred when it found that Mr. Ratcliffe's liability for Ms. Mattson's injury arose "out of the ownership, maintenance or use" of Mr. Ratcliffe's vehicle, which was not involved in the underlying accident. In order for us to address Milbank's claims herein we must examine the language

---

[7] West Virginia Code § 51-11-4(b)(1) provides, in pertinent part, that this Court shall have appellate jurisdiction over "[f]inal judgments or orders of a circuit court in all civil cases . . . entered after June 30, 2022 . . . ."

of the underinsured motorists provisions of Milbank's policy at issue. That policy states in the **UNINSURED/UNDERINSURED MOTORISTS COVERAGE - WEST VIRGINIA** endorsement, in pertinent part, as follows:

**Insuring Agreement**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" where such coverage is indicated as applicable in the Schedule or in the Declarations because of:

1. "Bodily injury" sustained by an "insured" and caused by an accident; and

2. "Property damage" caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle". . .

\*          \*          \*

**D.** "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" or "property damage" to an "insured" under that bond or policy is not enough to pay the full amount the "insured' is legally entitled to recover as damages.

The parties disagree as to the proper interpretation of this policy language. Respondents argue the language contains no requirement to establish that the underinsured motor vehicle alleged for liability purposes must be actually involved in the underlying accident. They suggest the language is ambiguous at best, and when presented with ambiguity, our courts

8

must strictly construe any ambiguous terms against the insurance company and in favor of the insured. *See* Syl. Pt. 4, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016). Respondents further emphasize that where the policy language involved is exclusionary, it should be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated. *See* Syl. Pt. 5, *Nat'l Mut. Ins. Co.*, 177 W. Va. 734, 356 S.E.2d 488. However, we find Respondents' position to be unavailing. The fact that parties disagree about the meaning of a term does not itself create ambiguity. *See T. Weston, Inc. v. Min. Cnty.*, 219 W. Va. 564, 568, 638 S.E.2d 167, 171 (2006).[8]

An insurance policy is a contract, and "[p]olicies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties." Syl. Pt. 3, *Kanawha Inv. Co. v. Hartford Steam Boiler Inspection and Ins. Co.*, 107 W. Va. 555, 149 S.E. 605 (1929). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or

---

[8] Similar to the interpreting statutes, "[T]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination [.]" *See Blake v. State Farm Mut. Auto. Ins. Co.*, 224 W. Va. 317, 321, 685 S.E.2d 895, 899 (2009); and "[I]nsurance policies are controlled by the rules of construction that are applicable to contracts generally. We recognize the well-settled principle of law that this Court will apply, and not interpret, the plain and ordinary meaning of an insurance contract in the absence of ambiguity or some other compelling reason." *Blake*, 224 W. Va. at 322, 685 S.E.2d at 900 (*citing Payne v. Weston*, 195 W. Va. 502, 507, 466 S.E.2d 161, 166 (1995)).

interpretation, but full effect will be given to the plain meaning intended." Syl. Pt. 4, *Cox v. Amick*, 195 W. Va. 608, 610, 466 S.E.2d 459, 461 (1995). "[A] court should read policy provisions to avoid ambiguities and not torture the language to create them." *Payne v. Weston*, 195 W. Va. at 507, 466 S.E.2d at 166.

A plain reading of the Milbank policy issued to Ms. Mattson requires that the owner's or operator's liability must arise out of the ownership, maintenance, or use of the "underinsured motor vehicle." In the present case, Respondents have admitted that the Mattson vehicle was not the underinsured motor vehicle which they allege triggered coverage. *See* App. at 91. Instead, they assert that the vehicle owned by Mr. Ratcliffe, which was undisputedly not involved in the accident, is the underinsured vehicle triggering coverage. In an attempt to expand coverage beyond the plain language of the policy, Respondents and the circuit court disregard the express and unambiguous language of the Milbank policy, which expressly states that the underinsured motorists coverage arises from the "ownership, maintenance, or use" of the alleged underinsured motor vehicle. Instead, the court focused on the ownership interest a permissive driver possessed in a tangential vehicle wholly unrelated to the accident at hand.

The SCAWV has in other contexts described when an injury involving a motor vehicle arises from its usage. In *Baber v. Fortner*, 186 W. Va. 413, 412 S.E.2d 814 (1991), the SCAWV held that for an injury to "arise out of" the use of a motor vehicle there must be:

> [A] causal connection between the use of the motor vehicle and the injury. Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle.

186 W. Va. at 417, 412 S.E.2d at 818 (*citing Detroit Auto. Inter-Insurance Exchange v. Higginbotham*, 95 Mich. App. 213, 290 N.W.2d 414, 419 (1980)). The *Baber* court discussed whether an injury following an intentional shooting from a vehicle arose out of the use of the vehicle. The court ultimately concluded that it did not because shooting someone is not "foreseeably identifiable with the normal use of the vehicle." *Id*. Here, Respondents acknowledge that Mr. Ratcliffe was not the driver of any underinsured motor vehicle involved in the accident. Therefore, Respondents cannot establish that Ms. Mattson's death arose out of Mr. Ratcliffe's "use" of Mr. Ratcliffe's vehicle.

Turning to arising out of "ownership" and/or "maintenance," the SCWVA has provided guidance when dealing with uninsured motorists vehicle liability, which we find persuasive. In *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995), four high school-aged boys spent a morning driving around smoking marijuana and drinking alcohol. While at a gas station one of the boys, Clifford Reed, exited the vehicle. The remaining three boys left Mr. Reed at the gas station and returned to the highway where they were involved in a motor vehicle accident resulting in the death of the oncoming motorists. The decedent's estate asserted an uninsured motorists claim against Mr. Reed, even though he was not the owner of the vehicle, the driver of the vehicle, and was not present at the time of the accident. The decedent's insurance policy stated that uninsured motorists proceeds were

11

recoverable for damages "arising out of the ownership; maintenance; or use; of the uninsured motor vehicle." *Id*. at 616, 466 S.E.2d at 467. The *Cox* court held, pursuant to the applicable "arising out of" language in the decedent's policy:

> [T]he insured or relative may not recover damages pursuant to his or her uninsured motorists coverage from a person who was not occupying an uninsured motor vehicle involved in the accident when it occurred and who was not the owner or driver of the uninsured motor vehicle involved in the accident even though such person may be liable to the insured or relative under other appropriate causes of action.

*Id.* at 618, 466 S.E.2d at 469.

*Cox* is distinguishable on the basis that it deals with uninsured coverage and not underinsured coverage. In reviewing the two coverages a court will not treat them identically.[9] However, this does not foreclose its application persuasively in support of our plain understanding that the liability must arise from the ownership, maintenance, or use of the alleged underinsured vehicle.

Our plain reading of the Milbank policy is consistent with West Virginia Code § 33-6-31(b) (2015), which provides, in part:

> "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has

---

[9] *See Deel v. Sweeney*, 181 W. Va. 460, 383 S.E.2d 92 (1989).

been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage may be reduced by payments made under the insured's policy or any other policy.

This statutory provision plainly requires that the liability insurance must be applicable based on the ownership, operation, or use of the underinsured motor vehicle. In the present case, the liability insurance at issue was applicable due to Mr. Ratcliffe's use of Ms. Mattson's vehicle, not the alleged underinsured motor vehicle. Therefore, reading the statutory provision in conjunction with the Milbank policy, we find no conflict.

Respondents claim that the fact Mr. Ratcliffe's insurance coverage for third-party damages paid full liability limits is evidence that he should be viewed as the underinsured motorist. We do not agree. What transpired between Erie Insurance and their insured, Mr. Ratcliffe, was entirely based on the Erie policy issued to Mr. Ratcliffe and Erie's administration of that policy. Such actions do not dictate the treatment of insureds under a separate policy of insurance issued by Milbank to Ms. Mattson. To presume that Erie viewed Mr. Ratcliffe as an underinsured motorist is not the appropriate test for interpreting a separate contract between Milbank and Ms. Mattson. The plain language of the Milbank policy regarding underinsured motor vehicle coverage is the starting and ending point for such an analysis because of its clear and unambiguous policy language.

Lastly, Respondents assert that public policy concerns and potential inequities may result from this Court's determination that liability must arise from the ownership, maintenance, or use of the underinsured motor vehicle. We find no merit in such an assertion. The plain language of the Milbank policy and West Virginia Code § 33-6-31(b) require that the liability for an underinsured vehicle arise from the "ownership, maintenance, or use" or "ownership, operation, or use" of the alleged underinsured motor vehicle. In the present case, the Ratcliffe vehicle satisfies neither test. To the extent that this result may seem inequitable, the Legislature is the proper place to address such public policy concerns. *See Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 692, 408 S.E.2d 634, 642 (1991) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.")

In summary, after a review of the record and applicable law, we find that the circuit court erred in finding that Respondents were entitled to underinsured motorists coverage under the Milbank policy. Here, it is undisputed that Mr. Ratcliffe's liability did not arise from "the ownership, maintenance, or use" of his personal underinsured vehicle, as required by the terms of Milbank policy.

In its second assignment of error, Milbank contends that the circuit court erred when it failed to hold that the anti-stacking language in the Milbank policy prevented Respondents from recovering underinsured motorists proceeds after receiving liability

14

coverage proceeds under the same policy. However, as we find merit in Milbank's first assignment of error and because that error is dispositive of this matter, we do not need to, and will not, address Petitioner's second assignment of error.[10]

## IV.    CONCLUSION

For the foregoing reasons, the April 25, 2023, Order of the Circuit Court of Ohio County is hereby reversed and remanded for the entry of an order granting summary judgment in favor of the Milbank and denying Respondents' cross-motion for summary judgment and all other proceedings consistent with this opinion.

Reversed and Remanded.

---

[10] We further note Milbank's failure to present the anti-stacking argument before the circuit court; therefore, such assignment would be deemed to have been waived and not properly preserved on appeal. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999).").